The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
January 30, 2020

## 2020COA14

**No. 15CA0040, *People v. Tallent* — Constitutional Law — Searches and Seizures — Exclusionary Rule — Exceptions**

After the Colorado Supreme Court's decision in *People v. Morehead*, 2019 CO 48, 442 P.3d 413, stating that the trial court should exercise its discretion in allowing or disallowing the prosecution to argue new theories opposing a motion to suppress evidence on remand, a division of the court of appeals establishes a two-prong test intended to aid the trial court's decision. The division concludes that (1) the trial court should consider three factors — whether entertaining new arguments would unfairly prejudice any party to the case, whether the party proposing the new argument is at fault for not preserving it in an earlier proceeding, and any other factor the court deems relevant — in exercising its discretion to determine whether it will allow the

prosecution to advance new arguments on remand; and (2) if the court determines that new arguments opposing suppression may be raised for the first time on remand, it should proceed to the second step by ruling on the substance of the new arguments.

COLORADO COURT OF APPEALS      **2020COA14**

Court of Appeals No. 15CA0040
Larimer County District Court No. 07CR68
Honorable Julie Kunce Field, Judge
Honorable Stephen E. Howard, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Randy D. Tallent,

Defendant-Appellant.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE TAUBMAN
Bernard, C.J., and Welling, J., concur

Announced January 30, 2020

Philip J. Weiser, Attorney General, Melissa D. Allen, Senior Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Esteban A. Martinez, Alternate Defense Counsel, Longmont, Colorado; Joseph
T. Goodner, Englewood, Colorado, for Defendant-Appellant

¶ 1     Defendant, Randy D. Tallent, appeals his judgment of conviction entered on a jury verdict finding him guilty of theft, second degree burglary, second degree criminal trespass, and theft by receiving. He also appeals his adjudication as a habitual criminal and his sentence. Our division previously reversed the trial court's judgment, *People v. Tallent*, (Colo. App. No. 15CA0040, May 24, 2018) (not published pursuant to C.A.R. 35(e)), relying on *People v. Morehead*, 2015 COA 131, ¶ 52, 450 P.3d 733, 742 (*Morehead I*), *aff'd in part and rev'd in part*, 2019 CO 48, 442 P.3d 413 (*Morehead II*), to conclude that the trial court may not hear new arguments on remand in opposition to a defendant's motion to suppress. Following its decision in *Morehead II*, concluding that the trial court has discretion to hear on remand new arguments opposing a defendant's motion to suppress, the supreme court vacated our decision and remanded the present case. *People v. Tallent*, (Colo. No. 18SC483, July 1, 2019) (unpublished order). We now reverse and remand for further findings.

¶ 2     Because the supreme court vacated our opinion, we restate the background and some of the legal principles below.

1

## I. Background

¶ 3    Around midnight one night in January 2007, a police officer was in his patrol car in an alley watching for a vehicle that had been illegally parking in a handicapped space. The officer saw Tallent near a garage in the alley. When Tallent saw the patrol car, he turned and ran, ignoring the officer's orders to stop. The officer saw Tallent pass through a fenced backyard, but then lost sight of Tallent and called for backup.

¶ 4    The responding officers followed footprints in the snow and found Tallent hiding on the front porch of a nearby building. He was arrested at gunpoint, handcuffed, and searched. The officers found a set of keys with a remote entry fob in Tallent's pocket. Using the fob, the officers located Tallent's car, which they impounded and eventually searched pursuant to a warrant.

¶ 5    After Tallent's arrest, officers again tracked his footprints, first to a screwdriver dropped in the snow and then to a garage where they found tools that had recently been reported stolen from a nearby construction site, as well as other stolen property. In the meantime, the officers discovered that Tallent had an outstanding warrant for his arrest on a parole violation.

¶ 6     Over the course of the next few months, the police continued investigating leads stemming from property found in the garage. The police also monitored phone calls Tallent placed while in jail. These investigative efforts led the police to additional evidence and witnesses.

¶ 7     Before trial, Tallent moved to suppress the evidence and statements obtained as a result of his arrest.  Specifically, he urged the trial court to suppress

> everything learned or obtained including but not limited to any statements reportedly made by Mr. Tallent following and as a result of his unlawful seizure, detention and arrest; resulting from his unlawful custodial interrogation; resulting from the unlawful entry and search of the garage where he was storing his personal property; and resulting from the unlawful seizures and searches of his personal property and motor vehicle, as well as any evidence which is fruit thereof.

¶ 8     After a hearing, the trial court initially granted Tallent's motion in a bench ruling.  Then, in a written order, the trial court reconsidered and partially denied the motion to suppress.[1]  After a

---

[1] The trial court suppressed evidence seized from Tallent's car.  The People brought an interlocutory appeal, and the supreme court reversed.  *See People v. Tallent,* 174 P.3d 310 (Colo. 2008).

jury trial, Tallent appealed, and a division of this court reversed the denial of his motion to suppress. *People v. Tallent*, slip op. at 2 (Colo. App. No. 09CA0981, Aug. 16, 2012) (not published pursuant to C.A.R. 35(f)). The division determined that Tallent was arrested without probable cause. *Id.* at 21. The division concluded that "[b]ecause Tallent was arrested without probable cause, evidence obtained as a result of that arrest should not have been admitted at trial. Accordingly, we reverse the judgment of conviction and remand for a new trial." *Id.*

¶ 9     On remand, the People filed a "motion to preserve evidence," arguing that evidence obtained after Tallent's illegal arrest was admissible under three exceptions to the exclusionary rule: inevitable discovery, independent source, and attenuation. During a hearing on the People's motion, the trial court heard testimony from the officers involved in the arrest and investigation. The trial court stated that it would also consider the transcripts from the original 2007 suppression hearing and related proceedings.

¶ 10    In two written orders, the trial court concluded that some evidence obtained after Tallent's arrest was admissible either because the People proved that it was sufficiently attenuated from

4

the illegal arrest or officers would have inevitably discovered the evidence through lawful means. The trial court concluded that the People could introduce: (1) evidence of where Tallent's footprints in the snow led, the screwdriver, and all evidence found in the garage; (2) Tallent's name and other identifying information obtained after his arrest; (3) all evidence obtained as a result of monitoring Tallent's phone calls from jail; and (4) statements Tallent made after being advised of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). However, the trial court suppressed: (1) evidence obtained during the search of Tallent incident to his arrest; (2) evidence found during the search of Tallent's car; and (3) statements Tallent made before being advised of his rights under *Miranda*. A jury convicted Tallent of all charges. He was later adjudicated a habitual criminal by the trial court and sentenced to forty-eight years in the custody of the Department of Corrections.

¶ 11    Tallent appealed, and this division reversed, relying on *Morehead I*, ¶ 52, 450 P.3d at 742, and the supreme court vacated that decision, in light of *Morehead II*.

## II. Discussion

¶ 12    On appeal, Tallent contends that the trial court erred in permitting the People to make new arguments on remand regarding the admissibility of the evidence obtained after his illegal arrest. He bases this argument primarily on the law of the case doctrine, relying on *People v. Roybal*, 672 P.2d 1003, 1005 (Colo. 1983). We do not reach the question of whether the trial court erred; instead, we remand for further findings in light of the supreme court's decision in *Morehead II.*

### A. Standard of Review

¶ 13    We review a trial court decision to hear new arguments on remand in a suppression hearing for an abuse of discretion. *See Morehead II*, ¶ 13, 442 P.3d at 418. As a general rule, we review the substance of a trial court's decision on a motion to suppress as a mixed question of fact and law. *People v. King*, 16 P.3d 807, 812 (Colo. 2001). While we defer to the trial court's findings of fact when they are supported by sufficient competent evidence in the record, we review conclusions of law de novo. *Id.*

¶ 14    We review preserved errors of a constitutional dimension for constitutional harmless error. *Hagos v. People*, 2012 CO 63, ¶ 11,

6

288 P.3d 116, 119.  Under that standard, we will reverse unless the People prove any error was harmless beyond a reasonable doubt. *Id.*

## B.  Applicable Law

¶ 15    The United States and the Colorado Constitutions prohibit unreasonable searches and seizures.  *See* U.S. Const. amends. IV, XIV; Colo. Const. art. II, § 7.  Evidence obtained as a result of an unconstitutional search or seizure must be suppressed.  *See King*, 16 P.3d at 813.  This exclusionary rule "applies both to the illegally obtained evidence itself and to the 'fruit of the poisonous tree' — any other evidence derived from the primary evidence." *People v. Schoondermark*, 759 P.2d 715, 718 (Colo. 1988).  However, there are exceptions to the exclusionary rule that "justify admission of evidence even though it is derived from information obtained" through unconstitutional means.  *Id.*  These exceptions "have been labeled independent source, attenuation, and inevitable discovery." *Id.* (summarizing these doctrines).

¶ 16    If an appellate court holds that a trial court erred in denying a defendant's motion to suppress, can the prosecution argue for the first time on remand that illegally obtained evidence is nonetheless

7

admissible under an exception to the exclusionary rule? That question was left open by the supreme court in *People v. Briggs*, 709 P.2d 911, 924 n.17 (Colo. 1985). In *Morehead I*, a division of this court concluded that a search of the defendant's home was unconstitutional and that the trial court's erroneous denial of the defendant's motion to suppress was not harmless. *Morehead I*, ¶¶ 33, 40, 450 P.3d at 739, 741. Further, the *Morehead I* division concluded that the prosecution could not present a "previously unargued theory of admissibility on remand." *Id.* at ¶ 47, 450 P.3d at 741. Thus, the People were "precluded from arguing on remand that any of the evidence derived from the unconstitutional search should still be admitted under the attenuation doctrine or one of the exceptions to the exclusionary rule" because they had not raised such arguments in the initial suppression hearing. *Id.* at ¶ 42, 450 P.3d at 741. However, the supreme court reversed the judgment of the court of appeals, concluding that the trial court is best positioned to decide whether to entertain new arguments on remand. *Morehead II*, ¶ 13, 442 P.3d at 418. In so doing, it announced that the trial court may, in its discretion, allow the prosecution a second bite at the apple on remand.

¶ 17　　However, in multiple decisions since *Briggs*, the supreme court has recognized that, in certain situations where the People fail to present an argument for admissibility at an initial suppression hearing, they cannot later raise that argument on remand. *See People v. Null*, 233 P.3d 670, 681 (Colo. 2010) (declining to give the prosecution "a second bite at the apple" when it failed to carry its evidentiary burden on statutory suppression issue (quoting *Burks v. United States*, 437 U.S. 1, 17 (1978))); *Moody v. People*, 159 P.3d 611, 617 (Colo. 2007) (declining to remand for further findings on standing argument not raised by the People in the trial court or on appeal); *People v. Syrie*, 101 P.3d 219, 223 (Colo. 2004) (holding that the People "surrender[ed]" an alternative theory of admissibility by not raising it in the trial court); *People v. Quintero*, 657 P.2d 948, 951 (Colo. 1983) (declining to remand on an inevitable discovery issue when the "prosecution did not rely upon that rule in [op]posing the initial suppression motion, nor did it raise the rule in its brief" and, based on the record, the claim would have been futile); *Morehead I*, ¶¶ 44-46, 450 P.3d at 741 (discussing *Null, Moody, Syrie,* and *Quintero*); *see also People v. Schaufele*, 2014 CO 43, ¶ 43, 325 P.3d 1060, 1068 (Boatright, J., concurring in the

judgment) (declining to review the merits of a suppression order when "the entirety of the People's argument on appeal rests on a claim that they failed to raise until filing a motion for reconsideration"); *People v. Crippen*, 223 P.3d 114, 116-17 (Colo. 2010) ("Because the record . . . contains no indication that the applicability of the good faith exception was either alleged by the prosecution or resolved by the district court, we decline to address it on appeal."); *People v. Salazar*, 964 P.2d 502, 507 (Colo. 1998) ("Because the issue of consensual encounter was not raised by the prosecution below, we decline to resolve the issue in this appeal."); *People v. Titus*, 880 P.2d 148, 152 (Colo. 1994) ("The issue of whether the evidence should be admitted under the good-faith exception to the exclusionary rule was not raised in the trial court, and therefore is not appropriately before us."). In *Morehead II*, the supreme court clarified that "[w]hile [*Moody*, *Null*, *Syrie*, and *Quintero*] may demonstrate this court's reluctance to consider or initiate further proceedings concerning arguments not adequately developed below, none purports to control the arguments that can be heard by a trial court upon retrial." *Morehead II*, ¶ 15, 442 P.3d at 419. However, the *Morehead II* court provided limited guidance

as to how a trial court should exercise its discretion in determining whether to hear new arguments on remand.

¶ 18　　The *Morehead II* court suggested at least two factors: (1) Will the allowance of new arguments unfairly prejudice one or more of the parties? (2) Is the party proposing a new argument at fault for having failed to preserve it in an earlier proceeding? *Morehead II*, ¶ 13, 442 P.3d at 418. We further conclude that a trial court may consider any other factor it deems relevant. *See, e.g., People v. Brown*, 2014 CO 25, ¶ 24, 322 P.3d 214, 221 (in considering whether to grant a continuance to substitute defense counsel, trial court must consider multiple factors, including any other "case-specific factors").

¶ 19　　Accordingly, a trial court should engage in a two-step analysis when the prosecution seeks to argue new theories to oppose a defendant's motion to suppress on remand. First, applying the factors listed above, the court must exercise its discretion to determine whether it will allow the prosecution to advance new arguments on remand. If the court determines that new arguments against suppression are proper on remand, it may proceed to the second step by ruling on the substance of the new arguments.

¶ 20    In announcing this two-step analysis, we emphasize the distinction between usurping the trial court's discretion to hear new theories on remand and requiring the trial court to articulate the reasons why it is exercising its discretion to hear new theories on remand.  This approach harmonizes the decisions in *Morehead II* and previous decisions denying the prosecution "a second bite at the apple."  *See Morehead II,* ¶ 13, 442 P.3d at 418; *Null,* 233 P.3d at 681.

## C.  Analysis

¶ 21    Tallent contends that the People were precluded from arguing on remand that the fruit of his unlawful arrest was admissible under the inevitable discovery and attenuation doctrines.  In light of *Morehead II*, we remand to allow the trial court to make further findings consistent with this opinion.

¶ 22    The People do not allege that the prosecution raised the inevitable discovery or attenuation arguments during the 2007 suppression hearing.  Indeed, they point to nothing in the record to demonstrate that these arguments were presented to the trial court

at any point before the previous appeal to this court.[2]  Instead, they argue that, because the trial court ruled in their favor, "there was no need for the People to contend the evidence was admissible under any exception to the exclusionary rule, and their failure to do so should not constitute waiver."[3]

¶ 23    We note that this argument assumes that the People knew they would prevail at the suppression hearing.  However, during the suppression hearing, the People did not know that there was "no

---

[2] The People apparently did not raise any inevitable discovery or attenuation argument in the prior appeal, either.  *See generally People v. Tallent*, (Colo. App. No. 09CA0981, Aug. 16, 2012) (not published pursuant to C.A.R. 35(f)).

[3] Although Tallent does not argue that the People waived their arguments regarding inevitable discovery and attenuation, the People assert that they did *not* waive the claim.  We recognize that the Colorado Supreme Court addressed the doctrine of waiver in *People v. Rediger*, 2018 CO 32, 416 P.3d 893, and *People v. Smith*, 2018 CO 33, 416 P.3d 886.  In *Rediger*, the court stated that waiver requires the "intentional relinquishment of a known right or privilege." *Rediger*, ¶ 40, 416 P.3d at 902.  Thus, the court concluded that the defendant there did not waive his objection to an erroneous jury instruction when there was no evidence that he intended to relinquish the relevant right or that he knew of the error. *Id.* at ¶¶ 42-43, 416 P.3d at 902-03.  It is unclear whether this waiver analysis even applies in the present case because, unlike the criminal defendant in *Rediger*, the People here had no right or privilege to present evidence supporting the evidence's admissibility.

13

need" to make alternative arguments as to the admissibility of the challenged evidence.

¶ 24    This leads to a second consideration regarding the People's argument: it fails to appreciate the prosecution's burden of proof. At a suppression hearing, the People bear the burden of proving either that a warrantless search or seizure was constitutional or, if the search or seizure was illegal, that one of the exceptions to the exclusionary rule applies. *See Schoondermark*, 759 P.2d at 719; *see also Outlaw v. People*, 17 P.3d 150, 155 (Colo. 2001), *as modified on denial of reh'g* (Feb. 5, 2001). "The amount of the available evidence that the prosecution elects to present at a suppression hearing is left to the district attorney's discretion." *Roybal*, 672 P.2d at 1006. Thus, "the prosecution must be prepared to abide the consequences of an adverse ruling when it elects not to offer available probative evidence." *Id.* As a result, the prosecution has the opportunity to make all relevant arguments for admissibility at the initial suppression hearing. Accordingly, prosecutors regularly make alternative admissibility arguments during suppression proceedings. *See, e.g., People v. Hyde,* 2017 CO 24, ¶ 38, 393 P.3d 962, 971 (Eid, J., concurring in the judgment)

(noting that, in trial court, the prosecution advanced alternative arguments that warrantless search was permissible as search incident to arrest or that the defendant consented).

¶ 25 Allowing the People to raise new admissibility arguments on remand may give the prosecution "a second bite at the apple" that it would not otherwise receive. *Null*, 233 P.3d at 681 (quoting *Burks*, 437 U.S. at 17). According to the People, they are permitted to identify one ground for admissibility in the initial hearing. If on appeal the denial of a motion to suppress is reversed, they may make alternative arguments on remand. The *Morehead II* court held that the trial court must exercise its discretion to determine whether the People should be allowed to do so, based on the particular circumstances of each case. Thus, on remand, the trial court should weigh the three factors noted above.

¶ 26 Accordingly, the trial court must articulate its exercise of discretion in permitting or disallowing the prosecution to present new arguments on remand.

### III. Conclusion

¶ 27 We note that Tallent raised additional contentions on appeal concerning the trial court's application of the inevitable discovery

doctrine, the trial court's denial of his motion for a continuance, and the constitutionality of the habitual offender sentencing scheme. Because these contentions are unlikely to arise on remand, we decline to address them.

¶ 28 Accordingly, the judgment is reversed, and the case is remanded for further proceedings consistent with this opinion. Once the trial court rules, the adversely affected party or parties may appeal that decision.

CHIEF JUDGE BERNARD and JUDGE WELLING concur.