495 P.3d 944
The PEOPLE of the State of Colorado, Petitioner,
v.Randy D. TALLENT, Respondent.
Supreme Court Case No. 20SC205 Supreme Court of Colorado.
September 27, 2021
Attorneys for Petitioner: Philip J. Weiser, Attorney General, Melissa D. Allen, Senior Assistant Attorney General, L. Andrew Cooper, Senior Assistant Attorney General, Denver, Colorado
Attorney for Respondent: Joseph T. Goodner, Englewood, Colorado
En Banc
JUSTICE HART delivered the Opinion of the Court. ¶1 Two years ago, in People v. Morehead , 2019 CO 48, 442 P.3d 413, we recognized that when a suppression ruling is reversed on appeal, the trial court has discretion on remand to entertain new arguments and evidence from either party in its resolution of any remaining suppression-related issues not foreclosed by the decision of the appellate court. In this case, a division of the court of appeals, purporting to apply Morehead , announced a new two-step, multifactor test that trial courts would be required to apply when exercising that discretion. See People v. Tallent , 2020 COA 14, ¶¶ 18–20, 490 P.3d 557, 562 (" Tallent III " ). Because the trial court relied on new arguments without explicitly applying that novel test, the division reversed Joseph Tallent's conviction and remanded for the trial court to apply the test retroactively. Id. at ¶¶ 25–26, 28, 490 P.3d at 563.
¶2 We reject the division's approach, which strays from our decision in Morehead and imposes unnecessary constraints on trial courts. Further, based on the existing record in Tallent's case, we conclude that the trial court did not err in considering the People's new arguments on remand. We therefore reverse the division's judgment and remand for consideration of Tallent's remaining arguments on appeal.
I. Facts and Procedural History
¶3 In January 2007, police arrested Tallent after he spontaneously ran when he saw nearby police officers, eluded the officers in a chase through several backyards, and hid on a covered porch. After the arrest, police discovered an outstanding felony warrant for Tallent. Subsequent searches of his person, his car, and an unlocked garage where he was first sighted uncovered a variety of stolen and unlawful items. Police also monitored Tallent's phone calls in jail over the following months, which led them to more stolen property.
¶4 Before trial, Tallent moved to suppress all evidence and statements obtained as a result of his arrest, his interactions with police, and the various searches they had conducted. The court held an evidentiary hearing, during which the parties and the court engaged in colloquy as to whether the initial interaction between Tallent and the police was in fact an arrest or whether it was better characterized as an investigatory stop, for which the police would need only reasonable suspicion. During that hearing, the People began to discuss the doctrines of inevitable discovery and independent source—both exceptions to the exclusionary rule—but the court said "[c]ome back with other doctrines." On July 18, 2007, the trial court issued an oral ruling that the police had lacked probable cause for the arrest. At that hearing, the court acknowledged that "perhaps you would want to make additional comments in light of the actual ruling as to the arrest." The People indicated that they might want to take an interlocutory appeal of the ruling. On July 20, 2007, however, the court, "upon further analysis," issued a written order concluding that Tallent's arrest was in fact constitutional. The court thus admitted the evidence at trial.1 Tallent was convicted as charged.
¶5 On direct appeal, a division of the court of appeals reversed Tallent's conviction and remanded for a new trial. People v. Tallent , No. 09CA0981, 2012 WL 3537006 (Aug. 16, 2012) (" Tallent I "). The division concluded that "[b]ecause Tallent was arrested without probable cause, evidence obtained as a result of that arrest should not have been admitted at trial." Id. at 21.
¶6 On remand, the People argued that even though the arrest was unconstitutional, the evidence they found could still be admitted under various exceptions to the exclusionary rule because the police had the reasonable suspicion necessary to justify their initial stop as an investigatory stop. Tallent disputed the exceptions’ applicability and argued that all of the evidence should be suppressed. After reviewing the parties’ briefing, the record of the prior suppression proceedings, and additional evidence presented by the parties on remand, the trial court issued a written order analyzing which post-arrest evidence could be admitted on retrial and which should be excluded. The court rejected the People's claim that no evidence should be suppressed because the outstanding felony warrant discovered after Tallent's arrest attenuated the link between the illegal arrest and the subsequent searches. However, the court agreed that certain evidence (such as Tallent's phone calls in jail and some of his statements to police) could be admitted under the attenuation and inevitable discovery exceptions to the exclusionary rule. Accordingly, the court admitted that evidence at retrial, suppressed the remaining post-arrest evidence, and dismissed the charges supported only by the latter. In this second trial, Tallent was otherwise convicted as charged.
¶7 Tallent appealed this conviction, challenging (1) the admission of post-arrest evidence on retrial, (2) the court's denial of his request for a continuance, and (3) the constitutionality of the habitual criminal statute. A division of the court of appeals reversed and remanded for a new trial. People v. Tallent , No. 15CA0040, 2018 WL 2356230 (May 24, 2018), vacated , (Colo. No. 18SC483, 2019 WL 2746936, July 1, 2019) (unpublished order) (" Tallent II ") . The division agreed that the post-arrest evidence was improperly admitted. Id. at ¶ 24. In doing so, it did not consider the arguments Tallent raised to challenge the admission of the evidence. Id. at ¶ 10. Instead, it relied on the reasoning of another division in People v. Morehead , 2015 COA 131, ¶ 42, 450 P.3d 733, 741, rev'd in part , 2019 CO 48, 442 P.3d 413, to conclude that "the People were ‘precluded from arguing on remand that any of the evidence derived from the unconstitutional [arrest] should still be admitted under ... exceptions to the exclusionary rule’ because they had not raised such arguments in the initial suppression hearing." Tallent II, ¶ 14 (quoting Morehead , ¶ 42, 450 P.3d at 741 ). Shortly thereafter, however, we disapproved of the court of appeals Morehead decision, granted the People's petition for certiorari, vacated the Tallent II division's opinion, and remanded to the court of appeals for reconsideration in light of our opinion in Morehead .
¶8 In a published opinion, the same division then announced a new test governing trial courts’ authority to consider new arguments. The division declared that " Morehead ... provided limited guidance as to how a trial court should exercise its discretion in determining whether to hear new arguments on remand." Tallent III , ¶ 17, 490 P.3d at 562. According to the division, a trial court presented with new arguments must weigh three factors—(1) whether allowing new arguments would "unfairly prejudice one or more of the parties," (2) whether "the party proposing a new argument [is] at fault for having failed to preserve it in an earlier proceeding," and (3) "any other factor [the court] deems relevant"—when engaging in the following two-step analysis:
First, applying the factors listed above, the court must exercise its discretion to determine whether it will allow the prosecution to advance new arguments on remand. If the court determines that new arguments against suppression are proper on remand, it may proceed to the second step by ruling on the substance of the new arguments. Id. at ¶¶ 18–19, 490 P.3d at 562. The division also opined that a trial court must explicitly articulate its reasoning for allowing or disallowing new arguments. Id. at ¶¶ 20, 26, 490 P.3d at 562–63. Accordingly, without addressing Tallent's remaining arguments, the division reversed Tallent's conviction and remanded "to allow the trial court to make further findings consistent with [its] opinion." Id. at ¶ 21, 490 P.3d at 562.
¶9 The People again petitioned for certiorari review, which we granted.2 II. Analysis
¶10 We begin by considering the appropriate standard of review. Although this case comes to us on a petition for certiorari filed by the People, it began as an appeal from the trial court filed by Tallent. Because Tallent did not advance his current argument in the trial court, we conclude that it is subject to plain error review. We then set out the legal principles that govern a trial court's decision to consider new arguments and evidence after the reversal of its prior suppression ruling. These principles lead us to reject the division's approach. And from the existing record, we conclude that the trial court did not err—let alone, plainly err—in exercising its discretion to consider the People's new arguments in this case. Accordingly, we reverse the division's judgment and remand for consideration of Tallent's remaining arguments on appeal.
A. Standard of Review ¶11 The division seems to have assumed (and the parties do not dispute) that Tallent preserved this issue in the trial court. See Tallent III , ¶ 14, 490 P.3d at 561 ; see also Tallent II , ¶ 12. However, an appellate court has an independent, affirmative duty to determine whether a claim is preserved and what standard of review should apply, regardless of the positions taken by the parties. People v. Carter , 2021 COA 29, ¶ 13, 486 P.3d 473, 477 ; see C.A.R. 28(a)(7)(A) ; In re Marriage of Hogsett & Neale , 2018 COA 176, ¶ 32 n.3, 480 P.3d 696, 703 n.3, aff'd , 2021 CO 1, 478 P.3d 713.3 Therefore, before considering whether the trial court erred, we must address whether Tallent's claim is preserved. ¶12 To preserve a claim, a party must make an objection "specific enough to draw the trial court's attention to the asserted error." Martinez v. People , 2015 CO 16, ¶ 14, 344 P.3d 862, 868. When a party presents a new argument or alters the grounds for an objection on appeal, the issue is forfeited and reviewable only for plain error. Id. ; see Crim. P. 52(b).
¶13 At a status conference on remand from the court of appeals decision in Tallent I , the People requested "a hearing for the Court to make findings of fact as to what ... evidence" should be suppressed at the second trial, noting that they intended to raise "issues of attenuation, inevitable discovery, and the like." Defense counsel initially responded that admitting evidence under an attenuation or inevitable discovery theory was precluded both by the court of appeals’ mandate in Tallent I and by the trial court's prior rulings:
I think it's very clear that the court of appeals’ ruling says it was an illegal arrest and everything obtained from that is to be suppressed.
....
And I'm not so sure, quite frankly, that attenuation and inevitable discovery have not already been addressed as I see it in the transcripts where those arguments are being made. And I would like an opportunity to show that that issue has been determined already.
In other words, defense counsel argued (1) this matter is governed by the law of the case or (2) this matter has already been determined. Defense counsel did not argue that it was improper to consider those exceptions on remand because the People had not asserted them previously. Because the latter argument was never presented to the trial court, it was forfeited by Tallent. See Phillips v. People , 2019 CO 72, ¶ 17, 443 P.3d 1016, 1022 ("[W]hereas waiver requires ‘intent,’ forfeiture occurs ‘through neglect.’ " (quoting United States v. Carrasco-Salazar , 494 F.3d 1270, 1272 (10th Cir. 2007) )). Accordingly, we review for plain error. Phillips , ¶ 18, 443 P.3d at 1022.
B. Relevant Legal Principles ¶14 The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend. IV ; accord Colo. Const. art. II, § 7. Evidence derived from an unconstitutional arrest must be excluded at trial unless an exception to the exclusionary rule applies. People v. Thompson , 2021 CO 15, ¶ 20, ––– P.3d –––– ; see also People v. Schoondermark , 759 P.2d 715, 718 (Colo. 1988) (summarizing the inevitable discovery, independent source, and attenuation exceptions). ¶15 When a defendant moves before trial to suppress allegedly unconstitutionally obtained evidence, the trial court "shall receive evidence on any issue of fact necessary to the decision of the motion." Crim. P. 41(e). However, "the trial court has great discretion in managing the suppression hearing" and is not required "to hear, before denying a motion pursuant to Crim. P. 41, all alternate arguments and evidence relevant to the motion." Morehead , ¶¶ 11, 13, 442 P.3d at 417–18. Instead, the court " ‘may determine the most expeditious way to proceed ... as long as a party is not unfairly prejudiced’ by the procedure it orders." Id. at ¶ 13, 442 P.3d at 418 (quoting People v. Cunningham , 2013 CO 71, ¶ 13, 314 P.3d 1289, 1292 ). For instance, to conserve its time and resources, the court may choose to limit the initial suppression inquiry to whether the defendant's constitutional rights were violated, given that consideration of the exclusionary rule and its exceptions will be unnecessary if no constitutional violation is found. See Morehead , ¶ 13, 442 P.3d at 418. Or the court may choose to address a broader ground for suppression of evidence (such as an allegedly unconstitutional detention or arrest) before considering whether a subset of the same evidence should be suppressed on an alternate ground (like an asserted Miranda violation). The court could also direct the parties to make every plausible argument, including arguments in the alternative, from the beginning. Or the court might not specify any of these particular approaches. All of these choices are within the discretion of the trial court. ¶16 As we recognized in Morehead , because the "scope and conduct of the suppression hearing are within [its] sound discretion," the trial court is best positioned to determine which issues were before it in a prior suppression proceeding. Id. Additionally, we acknowledged "the authority of a trial court to reconsider its prior rulings or entertain new theories, evidence, or arguments" unless the issue has been foreclosed by an appellate court's ruling in that case. Id. at ¶ 11, 442 P.3d at 417. Thus, we ultimately concluded that "where its [suppression] ruling ... has been disapproved, it is for the trial court, except where bound by the ruling of a higher court, to determine the appropriateness of entertaining new and different motions, evidence, arguments, or theories by either party." Id. at ¶ 19, 442 P.3d at 420.
¶17 Although the division characterized its test as merely providing additional guidance, we conclude that the division's decision does not comport with Morehead for three reasons. First, while we recognized that a trial court's exercise of discretion may be influenced by considerations like unfair prejudice and preservation, see id. at ¶ 13, 442 P.3d at 418, nothing in Morehead indicated—or even implied—that a court must explicitly address those factors before entertaining the merits of a new argument. Second, the division's approach claims to harmonize Morehead with our "previous decisions denying the prosecution ‘a second bite at the apple,’ " Tallent III , ¶ 20, 490 P.3d at 562 (quoting People v. Null , 233 P.3d 670, 681 (Colo. 2010) ); however, we have already explained that those fact-driven decisions are not pertinent in this context, as they "imply little if anything ... about the authority of a trial court on retrial following the defendant's successful challenge to an order denying suppression and his subsequent conviction." Morehead , ¶ 15, 442 P.3d at 418. Third, our opinion in Morehead repeatedly emphasized the breadth of trial courts’ discretion, whereas the division's approach seeks to diminish it. ¶18 Moreover, the division's approach does not align with the deferential standard of review applicable to trial courts’ discretionary actions. Though the division correctly observed that we review a trial court's decision to allow or disallow new arguments for an abuse of discretion, Tallent III , ¶ 13, 490 P.3d at 560 (citing Morehead , ¶ 13, 442 P.3d at 418 ), the division's probing inquiry undercuts that standard. See Carrillo v. People , 974 P.2d 478, 485–86 (Colo. 1999) (describing abuse of discretion as a "very high standard of review" that "serves to discourage an appellate court from second-guessing" a trial court's discretionary judgments). ¶19 Accordingly, we reject the division's test and review the trial court's decision to entertain new arguments for an abuse of discretion.4 A trial court abuses its discretion when its decision "is manifestly arbitrary, unreasonable, or unfair, or when the trial court misapplies or misconstrues the law." Fisher v. People , 2020 CO 70, ¶ 13, 471 P.3d 1082, 1086.
C. Application ¶20 Under Crim. P. 52(b), plain error occurs when an error is obvious and so undermines the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. See Hagos v. People , 2012 CO 63, ¶ 14, 288 P.3d 116, 120. Here, we perceive no error in the trial court's exercise of discretion to consider the People's arguments on exceptions to the exclusionary rule, let alone plain error warranting reversal. ¶21 Before ruling on what evidence could be admitted at retrial, the trial court held a full-day hearing on the issue, received extensive briefing, and discussed it at length with the parties on several other occasions. Given the complex history of the case, and because a different trial court judge had presided previously, the judge specifically encouraged the parties on remand to address "what the issues are, what's been decided," and "the effect of prior rulings." And the trial court carefully addressed the effect of those rulings and the court of appeals decision in Tallent I in its written order.
¶22 The inevitable discovery and attenuation exceptions were the central focus of these proceedings on remand. However, as we previously noted, Tallent never asserted that the People failed to raise those exceptions previously, nor did he object to their consideration on that basis. Accordingly, because Tallent never raised the issue of whether the People could be heard on arguments that they did not make in the prior suppression hearings, the trial court had no reason to articulate why it was exercising its discretion to consider the exclusionary rule exceptions on remand.
¶23 Moreover, the record suggests that the People had little opportunity to raise the exceptions in the prior suppression proceedings, which were focused mostly on whether Tallent's constitutional rights had been violated, rather than on whether the remedy of exclusion was appropriate in this case. In fact, the prosecutor attempted to raise the inevitable discovery and independent source exceptions during the initial oral argument on Tallent's first suppression motion, but the then-presiding judge cut his argument short, instructing counsel to "[c]ome back with other doctrines." And in a hearing roughly one month later, the same judge noted, "We did have discussion, but it was not very focused or lengthy about independent discovery for the items that were in the garage and that type of thing." In that same hearing, the judge noted that he assumed the parties would want to "make additional comments in light of the actual ruling as to the arrest." The transcripts of the original arguments strongly indicate that the first trial judge in this case had not required the parties to bring in all of their arguments at the beginning but had instead first considered the constitutional question and was open to entertaining additional arguments subsequently. 5 ¶24 Under these circumstances, we discern no abuse of discretion in the trial court's decision to consider the inevitable discovery and attenuation exceptions on remand. Consequently, Tallent's convictions should not have been reversed on that basis.
III. Conclusion
¶25 We reverse the judgment of the court of appeals and remand for consideration of Tallent's remaining arguments on inevitable discovery, the denial of his request for a continuance, and the constitutionality of the habitual offender statute.
JUSTICE GABRIEL dissents, and JUSTICE HOOD joins in the dissent.
JUSTICE GABRIEL, dissenting.
¶26 In People v. Morehead , 2019 CO 48, ¶¶ 2, 19–20, 442 P.3d 413, 415, 419–20, which was decided more than a decade after the initial suppression hearing and more than five years after the re-opened suppression hearing in the present case, this court concluded that whenever a court of appeals division orders a new trial based on an improperly denied defense suppression motion, the trial court on remand may allow the People to re-open the suppression hearing in order to present new evidence and arguments not raised in the prior hearing. We made clear, however, that the People's right to do so is not unlimited. Specifically, we observed that the trial court has discretion to allow the People to present new evidence and arguments as long as the defendant is not unfairly prejudiced by that procedure. Id. at ¶ 13, 442 P.3d at 418. We further noted that the trial court is "in the best position to determine whether the parties are at fault for having failed to preserve arguments on a matter the court considered to be at issue before it." Id.
¶27 Thereafter, we entered an order remanding the present case, in which certiorari was then pending, to the division for further consideration in light of our decision in Morehead . People v. Tallent (Colo. No. 18SC483, 2019 WL 2746936, July 1, 2019) (unpublished order). The division then issued the unanimous, published decision now before us. People v. Tallent , 2020 COA 14, 490 P.3d 557 (" Tallent III "). In its opinion, the division correctly observed that in Morehead , we had identified the two discretion-limiting factors noted above. Id. at ¶ 18, 490 P.3d at 562. The division then remanded the case to the trial court to decide, based on the two Morehead factors and "any other factor [the trial court] deems relevant," whether the trial court had properly allowed the People to present new evidence and arguments at a re-opened suppression hearing conducted after a prior division had ordered a new trial. Id. at ¶¶ 18–20, 28, 490 P.3d at 562–63.
¶28 Although the division here did no more than recite the exact factors that we identified in Morehead (and then made clear that these factors did not limit the trial court's exercise of discretion), we granted certiorari to decide whether the division failed to follow our guidance in Morehead by attempting to define and constrain the trial court's discretion. And now, the majority not only concludes that the division failed to follow Morehead but also goes on to decide the merits of the People's newly presented arguments, an issue that I do not believe is properly before us. Maj. op. ¶¶ 2, 17–24.
¶29 Because (1) I see no material daylight between the division's ruling below and what we said in Morehead , (2) the majority's current view of Morehead renders a trial court's exercise of discretion in deciding whether to re-open a suppression hearing boundless and effectively unreviewable, (3) the majority's ruling precludes fact-finding on the factors identified in Morehead and deprives Tallent of a full and fair opportunity to be heard on those factors, and (4) I disagree with the majority's decision to address the merits of the People's new arguments on remand, I respectfully dissent.
I. Factual Background
¶30 I generally agree with the majority's recitation of the pertinent facts. For purposes of my analysis, I will only emphasize two of those facts.
¶31 First, at the initial suppression hearing in this case, the People did not argue the exceptions to the exclusionary rule (i.e., inevitable discovery, independent source, and attenuation) on which they now seek to rely. And unlike the majority, see maj. op. ¶¶ 4, 23, I see nothing in the record suggesting that the People were precluded from doing so, at least in their written pleadings or by way of an offer of proof. The People simply did not pursue those arguments, and years later, after Tallent's appeal resulted in the suppression of the evidence at issue, the People claimed (and continue to assert) a right to a second bite at the apple, contrary to the previously long-settled principle that arguments not presented at a suppression hearing are waived. See People v. Crippen , 223 P.3d 114, 116 (Colo. 2010).
¶32 Second, because Morehead was announced more than a decade after the initial suppression hearing and more than five years after the re-opened suppression hearing in this case, Tallent had no opportunity to make a record regarding the factors that we identified in Morehead as pertinent to the trial court's exercise of discretion in deciding whether to permit the People to proffer new evidence and arguments on remand. Nor, for the same reasons, did the trial court make any findings regarding those later-identified factors.
II. Analysis
¶33 I begin by addressing the majority's determination of the applicable standard of review. In the course of that discussion, I point out what I perceive to be the inconsistency between the majority's concluding that Tallent did not preserve the issue that the prior divisions ruled on (and that formed the basis for the People's certiorari petition) and its simultaneously allowing the People to advance arguments that they indisputably did not raise during the initial suppression hearing in this case. I then turn to the question on which we granted certiorari, explaining my understanding of our decision in Morehead and of the division's opinion below and why I disagree with the majority's analysis and conclusions in this case. Finally, I discuss why I disagree with the majority's decision to address the merits of the People's newly presented arguments below.
A. Standard of Review
¶34 The majority begins by addressing the applicable standard of review and concludes that Tallent did not preserve the issue now before us. Maj. op. ¶¶ 11–13. The majority so concludes despite the fact that the People never argued that the issue was unpreserved and the divisions below ruled on that very issue. I disagree with the majority's conclusion.
¶35 As a preliminary matter, it is unclear to me why the majority is even discussing whether Tallent preserved the issue before us, given that the petition was brought by the People, and not by Tallent. Appellate courts do not ordinarily ask whether the respondent preserved for appellate review the issue that the petitioner is raising. And to the extent that preservation of the question now before us was ever an issue, it would have been an issue in People v. Tallent , No. 15CA0040, 2018 WL 2356230 (May 24, 2018) (" Tallent II "), not in the matter presently before us.
¶36 More to the point, I believe it to be well settled that when an issue is sufficiently brought to the attention of the court below and that court then rules on the matter, the question is properly preserved for appellate review. See Brown v. Am. Standard Ins. Co. , 2019 COA 11, ¶ 23, 436 P.3d 597, 600 (concluding that because the district court had ruled on the issue raised in the appellate court, the issue was preserved for appeal); Battle N., LLC v. Sensible Hous. Co. , 2015 COA 83, ¶ 13, 370 P.3d 238, 244 (concluding that an issue was properly preserved for appeal when, despite ambiguity in the request to the trial court, the trial court had ruled on the issue); cf. Comm. for Better Health Care for All Colo. Citizens v. Meyer , 830 P.2d 884, 888 (Colo. 1992) ("It is axiomatic that in any appellate proceeding this court may consider only issues that have actually been determined by another court or agency and have been properly presented for our consideration."). ¶37 Here, the division in Tallent II , at ¶ 14, expressly ruled on the very issue now before us, and our remand order after we announced our decision in Morehead placed the issue squarely before the division in Tallent III . Moreover, the Tallent III division directly addressed the very issue on which we granted certiorari, which is perhaps why no party raised any question about preservation in this case.
¶38 For all of these reasons, I believe that the issue was properly presented for our review.
¶39 In ruling to the contrary, the majority does not appear to recognize what I perceive to be the inconsistency in its approach to issue preservation. On the one hand, the majority, acting on its own, concludes that Tallent failed to preserve an issue presented by the People, on which the divisions below ruled, and on which we granted certiorari. On the other hand, the majority not only allows the People to advance arguments that they did not raise at the initial suppression hearing in this case but also proceeds to rule favorably for the People on those arguments.
¶40 In my view, fundamental fairness demands a more consistent approach to issue preservation, and I cannot subscribe to what appears to me to be the double standard reflected in the majority's approach.
B. The Division's Reading of Morehead
¶41 Turning then to the issue on which we granted certiorari, I note that in Morehead , ¶ 8, 442 P.3d at 416, we granted certiorari to decide whether a court of appeals division properly limited a trial court's authority on retrial to consider additional arguments for the admission of evidence that the division concluded should have been suppressed by the trial court before the defendant's first trial. We ultimately reversed the division's judgment, concluding that it had erred in restricting the trial court's discretion to consider such additional arguments. Id. at ¶ 20, 442 P.3d at 420. In reaching this conclusion, we observed that trial courts have great discretion in managing suppression hearings, including in prescribing the order of evidence and related matters. Id. at ¶ 13, 442 P.3d at 418. We made clear, however, that the trial court's discretion in this regard is not unlimited. Thus, we observed that a trial court may determine the most expeditious way to proceed and the need to take additional evidence, as long as no party would be unfairly prejudiced by the court's chosen procedure . Id. In addition, we noted, as pertinent here, "The scope and conduct of the suppression hearing are within the sound discretion of the trial court, and the trial court is therefore in the best position to determine whether the parties are at fault for having failed to preserve arguments on a matter the court considered to be at issue before it ." Id. (emphasis added). Accordingly, a trial court may preclude a party from presenting new arguments after a remand if the party was at fault for not having presented those arguments when the matter was first before the court.
¶42 In light of our decision in Morehead , we entered an order remanding the present case, in which certiorari was then pending, to the division for further proceedings. Tallent (Colo. No. 18SC483, July 1, 2019) (unpublished order). The division, in turn, issued an opinion remanding the case to the trial court with instructions that that court consider (and make findings regarding) (1) whether allowing the People to present new evidence and arguments on remand would unfairly prejudice Tallent, (2) whether the People were at fault for having failed to preserve their new arguments at the initial suppression hearing, and (3) "any other factor [the court] deems relevant." Tallent III , ¶¶ 18, 25, 490 P.3d at 562–63.
¶43 Although this remand order did no more than seek findings on the very factors that we identified in Morehead , the majority today concludes that the division below adopted a more restrictive standard than that which we set forth in Morehead and, on that basis, reverses the division's judgment. Maj. op. ¶ 25. For several reasons, I disagree with the majority's premise and therefore with the conclusions that flow from that premise.
¶44 First, I do not agree that the division below adopted a more restrictive standard than that which we set forth in Morehead . In my view, the division did no more than (1) recite the two factors that we said in Morehead were pertinent to the trial court's exercise of its discretion (i.e., whether allowing new arguments would unfairly prejudice another party and whether the party seeking to present new arguments was at fault for having failed to preserve those arguments in an earlier proceeding) and (2) make clear that these factors were not exclusive. See Tallent III , ¶ 18, 490 P.3d at 562 (noting that the trial court should consider the two factors expressly identified in Morehead and "any other factor [the trial court] deems relevant"). Assuredly, giving the trial court leeway to consider any factor that it deems relevant cannot be said to limit anything that we said in Morehead . Moreover, I believe that the division's decision to remand this case to the trial court with instructions that the court make findings consistent with Morehead made perfect sense, given that the re-opened suppression hearing in this case occurred over five years before Morehead was decided and Tallent had been given no opportunity to address (and the trial court had had no opportunity to make findings regarding) the Morehead factors.
¶45 I am not persuaded otherwise by the fact that the division below phrased its instructions in terms of a "two-step analysis." Tallent III , ¶ 19, 490 P.3d at 562. That analysis simply required that the trial court consider the Morehead factors (and any other factor the court deems relevant), and, if the court decided to allow the People to present new evidence and arguments, to rule on the new contentions. Id. In my view, this "test" says nothing different from what we said in Morehead . Nor did it erode the trial court's discretion in any way. To the contrary, it authorized the trial court to consider any factor that the court deemed relevant.
¶46 Second, by concluding that the division erred in requiring the trial court to consider the factors that we set forth in Morehead and "any other factor [the trial court] deems relevant," the majority effectively concludes that Morehead establishes no standards at all, which renders the trial court's determination as to whether to re-open the suppression hearing virtually unreviewable. (Indeed, in their opening brief in this court, the People made clear that this is precisely the result that they were seeking, arguing, remarkably, "The fact that [the division below] set any parameters at all on how a trial court exercises its discretion demonstrates that it overstepped its bounds.") In my view, such an analytical regime will likely ensure that, in the future, suppression hearings (and any number of other matters on remand) will be conducted by installment, with relitigation of an almost unlimited range of issues (by any party) being freely permitted. Unlike my colleagues, I cannot justify the costs in time and resources that will befall both litigants and our already exceptionally busy trial courts as a result of a rule that, contrary to the well-settled law of the case doctrine, places essentially no limits on a party's right to relitigate just about any issue previously decided by a trial court (and, as here, an appellate court). See People v. Dunlap , 975 P.2d 723, 758 (Colo. 1999) (noting that under the law of the case doctrine, "prior relevant rulings made in the same case are to be followed unless such application would result in error or unless the ruling is no longer sound due to changed conditions"); People v. Roybal , 672 P.2d 1003, 1005 (Colo. 1983) (noting that the law of the case doctrine "serves the dual purpose of protecting against the reargument of settled issues and assuring the adherence of lower courts to the decisions of higher courts").
¶47 Third, I note that the majority's ruling in this case does not account for the facts that the re-opened suppression hearing at issue took place more than five years before Morehead was decided and that, therefore, Tallent was given no opportunity to be heard on (and the trial court did not address) the propriety of the court's allowing further evidence and argument on the motion to suppress. Indeed, contrary to Morehead , the majority's ruling deprives Tallent of any opportunity to try to show the potential prejudice resulting from the trial court's allowing the People a second bite at the apple a decade after the original suppression hearing. Nor will Tallent have an opportunity to make a record regarding the People's alleged fault in not presenting its new evidence and arguments at the initial suppression hearing. ¶48 I do not read Morehead as stretching as far as my colleagues do. Nor can I subscribe to a procedure that deprives Tallent of a meaningful opportunity to be heard and that in future cases will essentially eliminate any basis for appellate review. As we have consistently observed, a trial court's discretion in matters like the one before us is not unlimited, and we may not abdicate our responsibility as a reviewing court to assess the propriety of the trial court's exercise of its discretion. In my view, the majority's opinion ensures just such a result.
C. Merits
¶49 Finally, I respectfully disagree with the majority's decision to address and determine the merits of the new arguments that the People raised for the first time at the re-opened suppression hearing.
¶50 Although I understand and sympathize with the majority's apparent desire to move this case forward, we have consistently declined to address issues beyond the scope of those on which we have granted certiorari. See, e.g. , People in Int. of R.D. , 2020 CO 44, ¶ 32 n.16, 464 P.3d 717, 726 n.16 ; Bermel v. BlueRadios, Inc. , 2019 CO 31, ¶ 18 n.4, 440 P.3d 1150, 1154 n.4.
¶51 In my view, the merits of the issues that the People raised for the first time at the re-opened suppression hearing are beyond the scope of the very limited question on which we granted certiorari. Moreover, for the reasons noted above, by ruling on these questions, the majority has deprived Tallent of any opportunity to make a record on the issues that we identified in Morehead as relevant to the trial court's exercise of its discretion. Because Morehead was decided years after the pertinent proceedings in the trial court, I believe that fundamental fairness demands that we give him that opportunity.
III. Conclusion
¶52 For these reasons, I believe that the division properly followed our mandate in Morehead , and its ruling ensured that Tallent would be given a full and fair opportunity to make a record on the factors that we, in Morehead , deemed pertinent to the trial court's exercise of its discretion. The majority's opinion, in contrast, deprives him of any opportunity to do so.
¶53 I would therefore affirm the judgment of the division below. Accordingly, I respectfully dissent.
I am authorized to state that JUSTICE HOOD joins in this dissent.
1 Although the trial court concluded that the arrest was constitutional and thus permitted introduction of evidence obtained from Tallent's person incident to his arrest, the court suppressed evidence obtained in the subsequent search of Tallent's car. The People challenged that ruling on interlocutory appeal, and this court reversed. See People v. Tallent , 174 P.3d 310 (Colo. 2008) (holding that police had authority to search the car incident to Tallent's arrest). The trial, therefore, included evidence found on Tallent's person and in his car.
2 We granted certiorari to review the following issue:
Whether the court of appeals failed to follow this Court's decision in People v. Morehead , 2019 CO 48, 442 P.3d 413, by attempting to define and constrain the trial court's exercise of its discretion on remand.
3 Moreover, an issue's preservation must be questioned where, as was the case here, the party raising the issue fails to identify, as required by C.A.R. 28(a)(7)(A), "the precise location in the record where the issue was raised and where the [trial] court ruled."
4 Of course, whether the trial court's decision has been validly limited or foreclosed by a higher court is a question of law that we review de novo. See, e.g. , Morehead , ¶¶ 17–19, 442 P.3d at 419–20 ; see also Howard-Walker v. People , 2019 CO 69, ¶ 22, 443 P.3d 1007, 1011 ("We review questions of law de novo.").
5 Indeed, in the initial hearing on the issue of the constitutionality of the arrest, Tallent's attorney observed: "I gather we are going to take it piecemeal one step at a time. That works for me."